J. L. DeBoard *v.* The State.*

(*Knoxville.* September Term, 1929.)

Opinion filed December 9, 1929.

*As to sufficiency of allegations in indictment charging breach of the peace, see 8 R. C. L., 286; R. C. L. Perm. Supp., p. 2241.

GEORGE W. GORRELL, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The defendant was convicted under an indictment construed by the trial judge to charge a violation of chapter 427 of the Acts of 1907. He was fined $100 and given a jail sentence of eight months.

There was a motion to quash the indictment below, the substance of which was that the indictment charged no offense under the laws of Tennessee.

The indictment contains the following:

"That J. L. DeBoard heretofore, to-wit on the — day of May, 1929, and on divers other days within twelve months in the State and County aforesaid, did unlawfully, and wilfully prowl and travel through the above County and the Town of Newport in said County, and State, to the disturbance of the peace and alarming of the citizens of said County for the purpose of alarming and terrorizing the citizens thereof by trespassing upon their inclosed premises and secretly looking in the windows of the home of C. B. Tarwater and other citizens of said County in the nighttime, and looking in the windows of

said homes with intent and for the purpose of seeing and viewing bodies of females of said home while undressing, and thereby alarming, terrorizing said citizens and disturbing the peace of the town and County.''

Chapter 427 of the Acts of 1907, is in these words:

''That any person or persons who shall wilfully prowl or travel or ride or walk through the country or towns of this State to the disturbance of the peace or to the alarming of the citizens of any portion of the State, or for the purpose of damaging or destroying property, or for the purpose of intimidating or terrorizing any citizen or citizens of this State, or for the purpose of causing through threats or intimidation or other improper means any citizen or citizens of this State to do or not to do any lawful thing or to do any unlawful thing shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than $50 or more than $100 and imprisoned in the county jail for not less than six months or more than twelve months, said imprisonment to be within the discretion of the Judge trying the case.''

█ This statute was enacted at the time of the Night Rider troubles and was aimed at the activities of that organization. While the State concedes that such was the primary object of the statute, it nevertheless insists that conduct, such as the defendant is charged with, is within the purview of the law.

The only part of the statute thought to support the indictment is the denunciation of those who ''wilfully prowl or travel or ride or walk through the country or towns of this State to the disturbance of the peace or to the alarming of the citizens of any portion of the State.''

The argument is that *wilfully* means *intentionally,* *Smith* v. *State,* 119 Tenn., 521, and that the intent to disturb and alarm may be inferred from doing an act which it is urged has the natural tendency to disturb and alarm. But the charge was that defendant was guilty of prowling around and "secretly looking" in windows for the purpose of seeing females undress. The intent having been to do the thing secretly, there could have been no intent to disturb or alarm. An act, secret and unknown, would not tend to the disturbance of the peace and alarming of the citizens.

The language quoted was obviously directed against prowlers who made their presence known and sought by their presence, in regalia or otherwise, to intimidate those whom they visited.

Nor do we think the indictment charges a breach of the peace, accompanied by a trespass, cognizable under the common law. *State* v. *Watkins,* 23 Tenn. (4 Humph.), 256; *State* v. *Farnsworth,* 18 Tenn. (10 Yerg.), 261. There was no breach of the peace in the case before us.

In the elaborate consideration of the nature of a breach of the peace contained in the opinion of Judge FRIERSON in *State* v. *Reichman,* 135 Tenn., 653, distinction was taken between the essentials of a breach of the peace which was an offense against the public at large and a breach of the peace which was an offense against individuals. The conduct of the defendant would fall under the latter class, if it was a breach of the peace at all. On page 714 of the discussion in the above case, upon petition to rehear, it was said:

"The argument is now made, however, that violence, actual or threatened, is a necessary ingredient of a breach of the peace, and several authorities are pressed

upon our attention. If it is meant by this that the act complained of must either itself be violent, or of such a nature as that its tendency is to provoke or incite or lead others to violence or turbulence of some kind, the contention is correct as to those breaches of the peace which invade the security and protection of individuals.''

The act of the defendant was not in itself violent and since it was done secretly, it had no tendency to incite others to violence. See *Roberson* v. *State,* 43 Fla., 156, 52 L. R. A., 751, and *Judy* v. *Lashley,* 50 W. Va., 628, 57 L. R. A., 413, referred to in *State* v. *Reichman, supra.*

In *City of Chicago* v. *Thomas Confare,* 183 Ill. App., 148, the defendant was prosecuted under an ordinance of that city directed against improper noise, riot, disturbance, breach of the peace and diversion tending to a breach of the peace. The defendant had crawled under the canopy of an elevated railroad and looked up between the cracks under the clothes of women passing above him. The court held that his conduct was not a breach of the peace.

In *Grand Rapids* v. *Williams,* 112 Mich., 247, 36 L. R. A., 137, relied on by the State, the conviction was sustained of one found guilty of peeking into windows of an occupied, lighted, residence at an hour of the night when people usually retired. The prosecution, however, was based on an ordinance of Grand Rapids which, among other things, made it an offense to be ''guilty of any indecent, insulting or immoral conduct or behavior in any public street or elsewhere in said city.''

We are not referred to any statute of Tennessee or any ordinance of the Town of Newport directed against prurient spying such as the defendant was charged with. While such conduct is of course reprehensible and should

be punished, we are not aware that it is covered by any statute or any ordinance of the town in which it was alleged to have taken place.

It is conceded that the indictment does not charge the common-law offense of eavesdropping. There was no listening, no repeating. Bishop on Criminal Law, p. 387.

Reverse the judgment and quash the indictment.