CHARLES DAVID NOE and JERRY W. RHUDY

*v.*

STATE OF TENNESSEE.

387 S.W.2d 348.

(*Jackson*, April Term, 1964.)

Opinion filed December 11, 1964.

Petition for Rehearing Denied March 4, 1965.

Don Owens, Memphis, for Jerry W. Rhudy.

Marvin B. Gambill, Memphis, for Charles David Noe.

George F. McCanless, Attorney General, Marne S. Matherne, Assistant Attorney General, for the State.

Mr. Justice Dyer delivered the opinion of the Court.

The plaintiffs in error, Charles David Noe and Jerry W. Rhudy, hereinafter called defendants or by their respective names, appeal from a conviction under an indictment charging they "did unlawfully and wilfully prowl, travel and ride through the City of Memphis, Shelby County, Tennessee to the disturbance of the peace and the alarming of the citizens of Memphis, Shelby County, Tennessee." This indictment is based on T.C.A. Sec. 39-2805.

On 4 April 1963, about 1:00 A.M., Judge John P. Colton and his wife were on their way home driving their car

west on North Parkway in Memphis about 25 miles per hour. They saw a car parked next to the curb on their side of the street and a man, later identified as defendant Noe, walking a few steps from the car holding up his hand; but as their car closed in on this scene they saw another man, later identified as defendant Rhudy, in front of the parked car and they did not stop. As the Colton car passed by this scene defendant Noe struck the side of the Colton car. The Coltons proceeded on toward home passing several street intersections until they reached an intersection on Evergreen at Jackson where they were stopped by a traffic light. Within two or three seconds the car they had passed on Parkway pulled up to this light stopping beside and to the left of the Colton car. The defendant Rhudy was driving and defendant Noe was sitting beside him. Noe said in a loud voice, "You mother-fucking son of a bitch are you the one who passed us twice on Parkway when we stopped." Judge Colton testified he was shocked and his wife became very nervous. Judge Colton told them he had only passed them one time on Parkway and then both defendants began to abuse the Coltons in the most vile language until the light changed. On the change of the light both cars pulled away from the intersection and there is some evidence defendants were attempting to force the Colton car to the curb, but before reaching the next street defendants pulled on up ahead and the Coltons went on home. This is the testimony offered by the State.

The defendants testified they had car trouble and had stopped on North Parkway. That while stopped here, on two occasions, a car load of teenagers had passed them harassing and yelling at them. They thought the Colton car was the teenagers returning and Noe struck the side of this car and they gave chase overtaking the car at

Evergreen and Jackson. They do not deny using vile language after overtaking the Colton car but deny any attempt to force the Colton car to the curb.

The principal argument for reversal of this case is ably and succinctly stated by counsel for defendant in his brief as follows:

"The Statute herein involved, frequently designated as the Night Riding Statute, was enacted in 1907. Our research of the authorities reveals only two reported opinions of this Court construing it. The first is *DeBoard v. State,* 160 Tenn. 51 [22 S.W.2d 235], which is a 1929 opinion. In that case the defendant, a peeping tom, was convicted of violating the Statute. This Court held that the Statute is not broad enough to govern the acts of one secretly looking in windows.

"The other case is *Essary v. State,* 210 Tenn. 220, 357 S.W.2d 342. This is a 1962 opinion upholding the conviction of a group of defendants who, while involved in a labor controversy, gathered together and traveled to and assembled before the home of the prosecuting witness and attempted, through the use of angry and abusive language, to intimidate the witness and to influence him to leave his job. The defendants were fined $50.00. In the Essary case there was a preconceived plan and conspiracy as a result of which the defendants did unlawfully and wilfully prowl, travel and ride through the jurisdiction involved to the disturbance of the peace and the alarming of the citizens, and for the purpose of intimidating.

"It is the contention of the defendants, and especially the defendant, Rhudy, that the defendants' activities on the night in question did not constitute Night Riding

as contemplated by the Statute. It is readily admitted that the conduct of the defendants in their language to Judge and Mrs. Colton was reprehensible and inexcusable and was an obvious violation of the Disorderly Conduct Statute.

"The strongest evidence supporting the defendants' contention that at the time they followed and overtook Judge and Mrs. Colton they were under the impression that they were following a car of teenagers who had passed them previously and provoked them, comes from Judge and Mrs. Colton themselves. They both testified that the defendants, on overtaking them, accused them of being the persons who had previously passed them on two occasions. The defendants clearly, though crudely, indicated a case of mistaken identity on overtaking the Coltons. The Statute in question contemplates a premeditated and preconceived plot or conspiracy to intimidate predesignated persons for specific purposes. This is borne out in the Essary opinion.

"Such was not the case here. The actions of the defendants were spontaneous and without design. Although abominable, repugnant and offensive as they may have been, the acts of the defendants do not constitute a violation of the Night Riding Statute. To so hold would require a strained and improper interpretation of the Statute and the intent of the Legislature which enacted it. Such a holding would make every spontaneous fracas or act of disorderly conduct which occurred in the nighttime an act of Night Riding.

"For the above legal and technical reasons, it is respectfully submitted that the judgment should be reversed."

434

■ ■ We are not able to agree. This statute as it applies to the facts in this case says: "Any person * * * who shall willfully * * * travel * * * through the * * * towns, to the disturbance of the peace or to the alarming of the citizens of any portion of the state *. * *. shall be guilty * * *." This evidence supports the fact these defendants did travel over the streets of Memphis to the distrubance of the peace and alarming the citizens with whom they came into contact. There is ample evidence for the jury to find these acts were done wilfully.

■ The penalty provided by this statute is a fine of not less than $50.00 or more than $100.00 and confinement of not less than 6 months or more than 12 months. Noe was fined $50.00 and sentenced to serve 6 months, while Rhudy was fined $75.00 and sentenced to serve 9 months. Counsel for Rhudy argues, under these facts, the punishment meted to his client is excessive. We are unable to understand why the jury gave Rhudy a heavier penalty than Noe, but since the defendants elected to have the jury fix the time to be served we are without authority to change it.

We have examined all the assignments of error and find no reversible error in the record. Judgment affirmed.

## Petition to Rehear

■ The defendants, Charles David Noe and Jerry W. Rhudy, have filed petitions to rehear. These petitions contain no argument not previously made, cite no authority not previously considered, nor point out any material fact overlooked in our original opinion. Such being the case the petitions to rehear fail to comply with Rule 32 of this Court and are denied.