Carl **ARMSTRONG**, Carolyn Thomas, George Pryor, Gwendolyn White, and Eddie Tate, Plaintiffs,

v.

Buford **ELLINGTON**, Governor of the State of Tennessee, et al., Defendants.

Civ. No. 69–324.

United States District Court,
W. D. Tennessee, W. D.

April 8, 1970.

W. Otis Higgs, Ratner, Sugarmon, Lucas & Willis, Memphis, Tenn., for plaintiffs.

Thomas E. Fox, Deputy Atty. Gen., Nashville, Tenn., James F. Manire, Joseph A. Canale, Marshal Gerber, Leo Bearman, Jr., George W. Herring, Memphis, Tenn., for defendants.

Before PHILLIPS, Chief Circuit Judge, BROWN, Chief District Judge, and McRAE, District Judge.

## OPINION

ROBERT M. McRAE, Jr., District Judge.

In this case the plaintiffs seek a declaratory judgment of the unconstitutionality of the Tennessee criminal statute described in its caption as "Prowling or traveling for purposes of destroying property or intimidating citizens— Threats or intimidation—Penalty" T.C. A. § 39–2805. It is alleged that the statute is vague and overbroad, and therefore chills the exercise of First Amendment rights. Plaintiffs also seek injunctive relief prohibiting their trial in the state court where they have been indicted for violation of portions of the statute.

All but one of the defendants are elected or appointed officials or employees of the State of Tennessee, County of Shelby or City of Memphis. These include the Governor and the Attorney General of the State of Tennessee, the Mayor of Memphis, officials and officers of the Memphis Police Department, the Sheriff of Shelby County, the State Trial Judge and the State District Attorney General. The other defendant is the owner of the drive-in grocery who called the police, who, in turn, arrested the plaintiffs.

The Transcript of the Memphis city court hearing was filed in this cause. It was stipulated that the transcript would be considered the entire proof to be presented to this three-judge court on the applications for the preliminary and permanent injunctions.

The five plaintiffs were members of a group of six Negroes who were picketing a drive-in grocery at approximately 8:30 A.M. on February 19, 1969.[1] Plaintiffs contend that by so picketing they were exercising their First Amendment rights. The grocery is in a commercial building which contains a liquor store adjacent to the grocery. The building is placed on its premises so that customers are expected to drive in from the street and park between the building and the street. There is no distinguishable sidewalk separating the parking area from the street.

The plaintiffs were walking in single file and carrying signs on the parking area between the street and the building, and retracing their paths upon completion of their route in front of the building. These signs were not made exhibits to the proof in this court, and from the testimony there is a dispute as to what the portions of the signs which were visible actually said. The owner of the store testified that the signs were left on the premises at the time of the arrests and were the same signs that were produced and read into the record at the hearing in city court. Apparently, the signs had different messages on their opposite sides. The plaintiffs contend that their signs were displayed in a manner so that the message was "This is a city-wide boycott", or "White boy, let's everybody go home." On one side of the signs produced in city court were variously worded messages, such as "Free our brothers, Sweet Willie Wine, John B. Smith, John H. Fergerson, Super Cool, Robert Webster, Ben Berry, or suffer at the hands of the Invaders," "Invaders, this is my country and no crackers allowed, all violators will be put

to death," and "Hey Whitey the world would be swell if you would let me pull your tail off into hell". This last sign was described as having a drawing of a man with a gun and a tail.

The testimony in the city court hearing also reflects a dispute as to the conduct of the pickets with regard to third persons, who drove on to the parking area. The owner of the grocery and his employees testified that one or more of the pickets were observed, but not overheard, in apparent conversation with occupants of cars on the lot, which resulted in the cars leaving. The police officers and the owner and employees of the grocery also testified that several cars approached the lot but did not enter upon observing the presence of the pickets on the parking lot.

The plaintiffs deny that any of their group talked to any persons in cars. However, they do concede that some cars did not enter or left the parking lot while they were picketing and that their purpose was to cause persons not to purchase from the grocery in furtherance of their protest against racial injustice.

The owner of the grocery called the police. The police arrested all six pickets on city and state charges of disorderly conduct. The City Judge fined the five plaintiffs $50.00 each on the city charge and bound them over to the grand jury on the state charge of disorderly conduct.

The grand jury presumably did not consider the state disorderly conduct charge, but did return an indictment which charges that the plaintiffs

"* * * did unlawfully and willfully prowl, travel and walk in the vicinity of 595 E. H. Crump Boulevard, in Memphis, Shelby County, Tennessee, to the disturbance of the peace and intimidating and terrorizing the citizens of said State, in violation of § 39–2805 of the Tennessee Code Annotated."

Counsel for the plaintiff filed a Plea in Abatement to the indictment raising

---

1. The sixth member of the group was a juvenile, and, therefore, was taken to juvenile court.

the constitutionality of T.C.A. § 39–2805. The plea was overruled by the Criminal Court Judge.

■ With regard to injunctive relief against state criminal proceedings, the United States Supreme Court has said:

"Federal interference with a State's good-faith administration of its criminal laws 'is peculiarly inconsistent with our federal framework' and a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction." Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, 20 L.Ed.2d 182 (1968) (citing Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.)

"In short, we viewed *Dombrowski* to be a case presenting a situation of the 'impropriety of [state officials] invoking the statute in bad faith to impose continuing harassment in order to discourage appellants' activities * * *.' " 390 U.S. at 619, 88 S.Ct. at 1339.

"[T]he question for the District Court was not the guilt or innocence of the persons charged; the question was whether the statute was enforced against them with no expectation of conviction but only to discourage exercise of protected rights. The mere possibility of erroneous application of the statute does not amount 'to the irreparable injury necessary to justify a disruption of orderly state proceedings.' " 390 U.S. at 621, 88 S.Ct. at 1341.

In the case presently before the Court the proof does not establish the "special circumstances", "continuing harassment" or "bad faith" necessary to support a *Dombrowski* type injunction. We, therefore, deny the application for injunctive relief on those grounds.

Because the plaintiffs seek to enjoin a pending state court criminal proceeding, this case also raises the question whether 42 U.S.C.A. § 1983 is an exception to 28 U.S.C.A. § 2283.[2] This question has been resolved differently by various courts of appeals and district courts. See Landry v. Daley, 288 F.Supp. 200, 221, (N.D.Ill. July 3, 1968). In that case Judge Will, acting as a single judge, held that "section 2283 is not an absolute bar to injunctive relief in a section 1983 case where such a remedy is the only means of securing constitutionally protected rights." 288 F.Supp. at 225. In Cameron v. Johnson, *supra*, 390 U.S. at 613, n. 3, 88 S.Ct. 1335, decided April 22, 1968, the Supreme Court alluded to the question but noted that it was not necessary to resolve it in that case. However, subsequent to that ruling, the Supreme Court in a Per Curiam order did affirm Brooks v. Briley, 274 F.Supp. 538 (M.D.Tenn. 3 Judge Court 1967), affirmed 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647. In Brooks v. Briley the court held that Section 1983 is not an "expressly authorized" exception to Section 2283. 274 F.Supp. at 553. Upon the record in the instant case, this Court holds that 42 U.S.C.A. § 1983 is not an exception to 28 U.S.C.A. § 2283 and, therefore, no injunction may issue staying the pending criminal proceeding against the plaintiffs pursuant to 42 U.S.C.A. § 1983.

2. 42 U.S.C.A. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

28 U.S.C.A. § 2283 provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

However, because First Amendment rights are involved, a "district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967).

The statute under which the plaintiffs were indicted reads as follows:

"Any person or persons who shall willfully prowl or travel or ride or walk through the country or towns, to the disturbance of the peace or to the alarming of the citizens of any portion of the state, or for the purpose of damaging or destroying property, or for the purpose of intimidating or terrorizing any citizen or citizens of this state, or for the purpose of causing, through threats or intimidation or other improper means, any citizen or citizens of this state to do or not to do any lawful thing or to do any unlawful thing, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty dollars ($50.-00) nor more than one hundred dollars ($100.00), and imprisoned in the county jail for not less than six (6) months nor more than twelve (12) months, said imprisonment to be within the discretion of the judge trying the case." T.C.A. § 39–2805.

The Supreme Court of Tennessee has said that this 1907 statute was enacted at the time of the "Night Rider troubles" and that it was "obviously directed against prowlers who made their presence known and sought by their presence, in regalia or otherwise, to intimidate those whom they visited." De Board v. State, 160 Tenn. 51, 54, 22 S.W.2d 235 (1929).

It has been applied to a factual situation where striking workers undertook to forcibly coerce a nonstriking worker by threats of violence and intimidation to quit working. Essary v. State, 210 Tenn. 200, 357 S.W.2d 342 (1962). However, this is the first known time that it has been applied in the delicate area of First Amendment activities in the form of picketing.

Five types of walking, traveling, etc. are prohibited by the statute. The first two prohibited classes are walking, etc. that "disturbs the peace" or "alarms the citizens". The Tennessee Supreme Court has held that violence is not a necessary element of breach of public peace:

"Thus those acts which are breaches of the peace because they are disturbances in public places, or because they are an annoyance to the public at large or persons engaged in public functions, are carefully excluded from the rule requiring violence, actual or threatened, as an element of the offense." State ex rel. Thompson v. Reichman, 135 Tenn. 685, 703, 188 S. W. 597, 602 (1916).

Earlier in the same opinion the Court discussed the word "peace" in the context of the terms "breach of the peace" and "disturb the peace" in the following manner:

"It means, 'the tranquility enjoyed by citizens of a municipality or community where good conduct reigns among its members,' or, 'that invisible sense of security which every man feels so necessary to his comfort, and for which all governments are instituted.'" 135 Tenn. at 701, 188 S.W. at 601.

 This language is strikingly similar to that used by the Illinois courts in defining breach of the peace and held to be unconstitutional by the United States Supreme Court in Terminello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1948). The overbroad definition given by the Illinois court was:

"* * * misbehavior may constitute a breach of the peace if it stirs the public to anger, invites disputes, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of

peace and quiet by arousing alarm." 337 U.S. at p. 4, 69 S.Ct. at p. 895.

Thus interpreted, both the Tennessee and Illinois statutes prohibited all activity that disturbed, disrupted or annoyed a community's tranquility or sense of security. Under these statutes the criminality of conduct is determined not only by legitimate areas of concern to the state such as the time, place, number and conduct of those engaged in the activity, but also by the sensitivities and feelings of third persons to the ideas advocated by the participants. Under these interpretations a picket or march may be unlawful solely because the demands and courses of action proposed by the marchers is so contrary to the accepted standards and beliefs of the majority of the citizens that the community becomes alarmed. This prohibition violates the principle "* * * that a state may not unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions." Cantwell v. Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940).

By appropriately worded statutes, a state may regulate or prohibit certain conduct that affects the community.[3] However, a statute that prohibits all activity merely because it alarms or disturbs the community is unconstitutional for "* * * it sweeps within its broad scope activities that are constitutionally protected free speech and assembly." Cox v. Louisiana, 379 U.S. 536, 552, 85 S.Ct. 453, 463, 13 L.Ed.2d 471 (1964). This is true because "a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, * * * is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." Terminello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1948).

We hold that the statutory provisions prohibiting walking, traveling, etc. "to the disturbance of the peace or to the alarming of the citizens of any portion of the state" are overbroad by constitutional standards.

■■ The third type of walking or riding prohibited by T.C.A. § 39–2805 is that done "for the purpose of damaging or destroying property." This section of the statute is narrow and specific.[4] It does not require guessing and speculation as to the nature of the prohibited activity and does not invade any area of constitutionally protected freedoms. It is neither vague nor overbroad.

The last two prohibited activities under the statute involve walking or traveling that has as its purpose threatening or intimidating or terrorizing citizens. One section makes unlawful walking, riding, etc. "for the purpose of intimidating or terrorizing * * * citizens

---

3. In the recent case of Original Fayette County Civic and Welfare League, Inc. v. Ellington, 309 F.Supp. 89 (W.D.Tenn. Feb. 9, 1970) the same judges who heard the instant case, in an opinion by Chief District Judge Brown, held that the State of Tennessee Disorderly Conduct Statute, T.C.A. § 39–1213 was vague and overbroad, but that the Riot Statute, T.C.A. §§ 39–5101, 39–5102 was not. The phrase "breach of the peace" was included in both but in the Riot Statute, by definition, an act cannot be a breach of the peace unless it is an act of violence.

4. Clearly the word "property" as used herein refers to tangible property. Otherwise, it might be asserted that the crime was committed by anyone walking in the exercise of the fundamental right to properly picket and properly seek a boycott, because he might in some measure damage the business and hence the intangible property of the person picketed.

of this state." The other forbids walking, riding, etc. "for the purpose of causing, through threats or intimidation or other improper means, any citizen or citizens of this state to do or not to do any lawful thing or to do any unlawful thing."

Although not in the context of the statute under attack in this case, the Tennessee Supreme Court discussed the meaning of the words "threats and intimidation" in Payne v. Western & Atlantic R. R., 81 Tenn. 507, 521 (1884).

> "But, 'threats and intimidations' must be taken in their legal sense. In law a threat is a declaration of an intention or determination to injure another by the commission of some unlawful act; and an intimidation is the act of making one timid or fearful by such declaration. If the act intended to be done is not unlawful, then the declaration is not a threat in law, and the effect thereof is not intimidation in a legal sense." [5]

In one of the many Landry v. Daley opinions a three-judge court considered the Illinois Intimidation Statute of 1961. 280 F.Supp. 938, 960 et seq. (1968). By the terms of that statute, Ill.Rev.Stat. 1969, c. 38, § 12–6, a "person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority" certain acts such as infliction of physical harm or confinement.

In discussing the constitutionality of that statute the Court said:

> "The State of Illinois unquestionably has a legitimate interest in protecting persons from coercion by threats, even though expression is involved."

> "The freedoms of expression, however, are extremely vulnerable to excessive restriction. The threat of sanctions

may deter their exercise almost as potently as the actual application of sanctions. * * * Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity' [NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)]." 280 F.Supp. at pp. 961, 962.

As indicated above, the Tennessee statute being considered in this case prohibits walking, etc. "for the purpose of *intimidating or terrorizing* any citizen[s] * * * or for the purpose of causing, through *threats or intimidation or other improper means,* any citizen or citizens of this state to do or not to do any lawful thing or to do any unlawful thing * * *." (Emphasis added).

The use of the conjunction, "or", requires that this Court separately apply the applicable constitutional standards to "intimidating", "terrorizing", "threat", "intimidation" and "other improper means".

▬ By definition a "threat" in law is a declaration of intention to injure another by some unlawful act. We hold that this is not unconstitutional. On the other hand, "intimidation" and "intimidating" refer to separate acts of making one timid and fearful. In the consideration of the phrase "threats and intimidation" the Supreme Court of Tennessee pointed out that "intimidation" when connected by "and" was the accompanying result of "threats" and that there could be no intimidation without threats. Payne v. Western Atlantic R. R., *supra.* In the Illinois statute considered in Landry v. Daley, *supra,* "intimidation" by definition resulted from threats. However, by the use of the conjunction "or" in the instant statute, "intimidating" is alternately used with "terrorizing", and "intimidation" is al-

---

5. It is interesting to note that the Supreme Court of Tennessee in the 1884 case affirmed the holding of the trial court, on a demurrer, that there was no civil cause of action by the victim of a form of boycott. In that case the individual defendant allegedly issued a written memo that any employee who traded with the plaintiff merchant, would be discharged by the defendant railroad.

ternately used with "threat". Therefore, a literal reading of the statute could cause a person to be accused of and arrested for violating the statute if he were walking merely for the purpose of making a citizen timid or fearful or if he were walking merely to cause a citizen to do a lawful thing by making the citizen timid or fearful. As used in this statute "intimidation" and "intimidating" suffer from vagueness as well as overbreadth.

"Intimidating" in the statute is an alternative for "terrorizing", but the latter word refers to a stronger state of fear. It means to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind. We hold that "terrorizing" is specific enough and within the appropriate area in which the State of Tennessee might protect the citizens even though expression might be involved. The phrase "other improper means" is both vague and overbroad by constitutional standards.

The plaintiffs have argued that if any of the provisions of T.C.A. § 39–2805 are void for vagueness or overbreadth, then the entire statute must be declared unconstitutional. While it is true that the statute itself does not contain a section authorizing the severance of any invalid portion, there is a general severability statute applicable to the entire Code. T.C.A. § 1–310. That statute provides that an unconstitutional clause in a statute "shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid * * *." In every case in which it is practicable the courts should respect the legislative intent expressed in a statute and strike down only the invalid parts of the statute.

In Champlin Refining Co. v. Corporation Commission, etc., 286 U.S. 210, 234, 52 S.Ct. 559, 76 L.Ed. 1062 (1910) the Supreme Court set forth the test for determining when invalid parts of a stat-

ute should be severed. As reaffirmed and applied in United States v. Jackson, 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968), the test was stated as follows:

"Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."

After the portions of T.C.A. § 39–2805, which we conclude are unconstitutional, are elided, the statute reads:

"Any person, or persons who shall willfully prowl or travel or ride or walk through the country or towns * * * for the purpose of damaging or destroying property, or for the purpose of * * * terrorizing any citizen or citizens of this state, or for the purpose of causing, through threats * * * any citizen or citizens of this state to do or not to do any lawful thing or to do any unlawful thing, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00), and imprisoned in the county jail for not less than six (6) months or more than twelve (12) months, said imprisonment to be within the discretion of the judge trying the case."

In summary, we hold that the facts of the case do not warrant injunctive relief by this court against the prosecution and trial pursuant to the pending indictment in the state court. However, in accordance with our duty we have expressed our opinion on the constitutionality of the statute referred to in the indictment. Because all persons who would be involved in the further prosecution of the state court criminal proceeding under the pending indictment are parties to this suit, we assume that the issues resolved herein will be applied to that pending case.

An order will be prepared and entered consistent with this opinion.