[No. 18515-0-III. Division Three. October 12, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. WILSON AVILA, *Appellant*.

*Jeffrey C. Barker* (of *Barker & Howard*), for appellant.

*Steven M. Clem, Prosecuting Attorney,* and *Nancy A. Harmon, Deputy,* for respondent.

BROWN, J. — Juvenile Wilson Avila was convicted of intimidating his teacher, violating RCW 28A.635.100. We decide an implied element of the charge is intent to make a threat, not intent that the threat be conveyed. However, because of the language of the statute, we decide further that the threat must actually intimidate the victim. Al-

though we decide the evidence is sufficient to support and affirm Mr. Avila's conviction, pursuant to controlling case law, we vacate the sentence and remand for entry of the necessary ultimate findings and resentencing.

## FACTS

Fifteen-year-old Wilson Avila attended public school in Waterville. In January 1999, Mr. Avila left a derogatory note on the desk of his teacher, Kenneth Kimes. In response, Mr. Kimes wrote a referral slip reporting Mr. Avila's misconduct. Another student, Jami Riddell, escorted Mr. Avila to the principal's office with the referral.

On the way, Mr. Avila told Ms. Riddell that if the referral was for him, saying he was not doing his "f——g" work, he was going to "blow off Mr. Kimes' f——g head." After leaving Mr. Avila at the principal's office, Ms. Riddell told Mr. Kimes what Mr. Avila said. Later in the day, Mr. Avila made a similar statement to another classmate, Starrla Scharpp. Ms. Scharpp told Mr. Avila she was going to tell Mr. Kimes. Mr. Avila replied he did not care. Ms. Scharpp then told Mr. Kimes. Mr. Kimes reported the incident to the school administrator and to law enforcement. Mr. Kimes was concerned whether Mr. Avila "was going to do what he said he was going to do." The day after the incident, Mr. Avila admitted making the statements when questioned by Douglas County Deputy Sheriff Michael Robins. Mr. Kimes also sought a restraining order against Mr. Avila.

The State charged Mr. Avila with one count of intimidating a school administrator or teacher, RCW 28A.635.100. Following a bench trial, the juvenile court commissioner found Mr. Avila guilty. The juvenile court sentenced Mr. Avila to 6 months of community supervision and 24 months of community service. But before it imposed sentence, it appears the trial court failed to give Mr. Avila an opportunity to speak.

Mr. Avila appealed.

## ANALYSIS

### A. Elements

■ The issues are whether the trial court erred in concluding it was unnecessary for the State to establish that Mr. Avila intended to convey his threats to Mr. Kimes and then deciding the evidence was sufficient to support each element of intimidating Mr. Kimes under RCW 28A.-635.100.

The first issue turns on the correct interpretation of RCW 28A.635.100. The standard of review is de novo. *State v. Azpitarte*, 140 Wn.2d 138, 140-41, 995 P.2d 31 (2000). It appears no appellate court has discussed this statute, or its former version codified as RCW 28A.87.231.

RCW 28A.635.100 states:

> It shall be unlawful for any person, singly or in concert with others, to intimidate by threat of force or violence any administrator, teacher, classified employee, or student of any common school who is in the peaceful discharge or conduct of his or her duties or studies.

Violation of RCW 28A.635.100 is a gross misdemeanor subject to a fine of not more than $500, or imprisonment of not more than six months, or both. RCW 28A.635.120.

■ When interpreting a statute, the reviewing court strives to give effect to the Legislature's intent. *Hubbard v. Department of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). The appellate court reads each provision of the statute in relation to each other and construes the statute as a whole. *Id.* at 43. And unless there is ambiguity, this court derives the meaning of the statute from its language alone. *Azpitarte*, 140 Wn.2d at 142.

Mr. Avila contends RCW 28A.635.100 is ambiguous as to the intent requirement because it uses the words "to intimidate." We agree. A statute is ambiguous if susceptible to more than one reasonable interpretation. *Western Telepage, Inc. v. City of Tacoma*, 140 Wn.2d 599, 608, 998 P.2d 884 (2000).

The statute does not define "intimidate." The common meaning of intimidate is "to make timid or fearful: inspire or affect with fear: FRIGHTEN." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1184 (1993). The term "intimidate" is somewhat ambiguous; it "suggests a display or application (as of force or learning) so as to cause fear *or* a sense of inferiority and a consequent submission." WEBSTER'S, *supra*, at 1184 (emphasis added). Consequently, according to the common meaning of the term, an intimidated teacher or administrator need not necessarily feel threatened in the physical sense; a feeling of inferiority or timidness could constitute intimidation.

RCW 28A.635.100 also uses the term "threat." A threat could be either "an indication of something impending and usu[ally] undesirable or unpleasant," or an "expression of an intention to inflict loss or harm on another by illegal means and esp. by means involving coercion or duress of the person threatened[.]" WEBSTER'S, *supra*, at 2382. The statute qualifies threat by requiring the threat be one "of force or violence."

"Violence" includes numerous definitions. WEBSTER'S, *supra*, at 2554. "Force" also elicits too many disparate meanings to list here, but they run the gamut from "power, violence, compulsion, or constraint exerted upon or against a person or thing" to "the quality of conveying impressions intensely in writing or speech." WEBSTER'S, *supra*, at 887.

Read broadly, the statute could apply to a student who intimidates his or her teacher by threatening to openly ridicule the teacher's professional qualifications. Or a student could be guilty of intimidation if he or she threatens to blow off his or her teacher's head. Hence, the plain language of the statute is ambiguous as to the prohibited activity.

■■ "An ambiguous statute is subject to construction." *State v. Bash*, 130 Wn.2d 594, 601, 925 P.2d 978 (1996) (citing *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). "Where a statute is ame-

nable to more than one interpretation, legislative history and other aids to construction may provide guidance in construing the statute to give effect to the intent of the Legislature." *Bash*, 130 Wn.2d at 601 (citing *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 185, 829 P.2d 1061 (1992)).

Resort to the legislative history reveals RCW 28A.635-.100 originated as part of a response to campus disruptions during the Vietnam War era. H.B. 162, 41st Leg., 2d Ex. Sess. (Wash. 1970); LAWS OF 1970, ch. 98 (related to "civil disturbances" at both institutes of higher learning and public schools). The two operative sections of the statute prohibited interference (Section 1) and intimidation (Section 2).

Section 1 of House Bill No. 162, later codified as RCW 28B.10.570, states:

> It shall be unlawful for any person, singly or in concert with others, to interfere by force or violence with any administrator, faculty member or student of any university, college, community college or public school who is in the peaceful discharge or conduct of his duties or studies.

Section 2, later codified as RCW 28B.10.571, states:

> It shall be unlawful for any person, singly or in concert with others, to intimidate by threat of force or violence any administrator, faculty member or student of any university, college, community college or public school who is in the peaceful discharge or conduct of his duties or studies.

Certain representatives proposed and failed to pass an amendment inserting the word "willfully" between "interfere" and "by force" in Section 1 and between "to" and "intimidate" in Section 2. 1970 HOUSE JOURNAL 251-52.

In 1971, the Legislature amended the two statutes and enacted separate and virtually identical provisions pertaining to public schools. LAWS OF 1971, ch. 45. Apart from some minor amendments, these statutes have remained unchanged. Thus, RCW 28A.635.100 owes its existence to an older counterpart statute, RCW 28B.10.571, enacted in response to campus disturbances.

A legal commentator analyzed the original campus disturbance statutes soon after their enactment. *See* Recent Developments, *Statutory Control of Campus Disorder in Washington: Effect of R.C.W. §§ 28B.10.570-.573 (1970)*, 47 WASH. L. REV. 501 (1972). Regarding intent, the commentator reasoned "since the conduct prohibited is *malum in se*, as distinguished from an offense *malum prohibitum*, the statute implicitly requires that the actor have a guilty mind to be held criminally responsible." 47 WASH. L. REV., *supra*, at 502 (footnote omitted).

In connection with the clause "to intimidate by threat of force or violence," the commentator proposed three necessary elements. First, a threat in the sense of a " 'declaration of one's purpose or intention to work injury to the person, property or rights of another.' " 47 WASH. L. REV., *supra*, at 503 (quoting *State v. Cushing*, 17 Wash. 544, 555, 50 P. 512 (1897)). Second, "the threat must be of force or violence." 47 WASH. L. REV., *supra*, at 503. And third, "the law requires that the force or violence threatened must actually intimidate an administrator, faculty member, or student." 47 WASH. L. REV., *supra*, at 503-04.

The writer went on to note that "intimidation may be difficult to prove, since it is defined by the criminal law as 'putting in fear.' " 47 WASH. L. REV., *supra*, at 504 (quoting *Armstrong v. Ellington*, 312 F. Supp. 1119 (W.D. Tenn. 1970); *Shehany v. Lowry*, 170 Ga. 70, 152 S.E. 114 (1930)). "Even though the actor's conduct may annoy or perturb some, punishment under the statute would not be justified without a showing of actual interference or a 'putting in fear.' " 47 WASH. L. REV., *supra*, at 504.

■ ■ The legislative history and the law review commentary indicate that the Legislature originally intended RCW 28A.635.100 to protect school administrators and teachers from working in a disruptive atmosphere of fear caused by threats of actual physical violence against persons and property. Because the legislative history and law review commentary reveal the statute's purpose, we need

not resort to the rule of lenity as Mr. Avila has proposed. *See United States v. Wells*, 519 U.S. 482, 499, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997) (stating rule of lenity applies when criminal statute so ambiguous the reviewing court, after applying all tools at its disposal, can no more than guess at Legislature's intent).

The State asserts it need not prove Mr. Avila intended to carry out the threat or intended to communicate the threat directly or indirectly to Mr. Kimes, merely that the threat was made. To support its argument, the State relies on *State v. Edwards*, 84 Wn. App. 5, 924 P.2d 397 (1996); *State v. Kepiro*, 61 Wn. App. 116, 810 P.2d 19 (1991); and *State v. Hansen*, 122 Wn.2d 712, 862 P.2d 117 (1993).

*Edwards* discussed RCW 9.61.160, a statute making it unlawful "for any person to threaten to bomb" buildings or other places where people assemble. *Edwards*, 84 Wn. App. at 9. The *Edwards* court held the above quoted language "does not require specific intent; it merely requires proof of the threat." *Id.*

The *Edwards* court relied on *Kepiro*, which discusses RCW 9A.72.160(1). That statute states in pertinent part:

> [A] person is guilty of intimidating a judge if a person directs a threat to a judge because of a ruling or decision of the judge in any official proceeding, or if by use of a threat directed to a judge, a person attempts to influence a ruling or decision of the judge in any official proceeding.

The *Kepiro* court held the statute did not contain an implied element of actual or subjective intent to cause harm. *Kepiro*, 61 Wn. App. at 123. The *Kepiro* court, relying on policy grounds stated in analogous federal cases, reasoned:

> We believe that [RCW 9A.72.160(1)] was designed in part to prevent the disruption of judicial activity which flows from the making of a threat, and such disruption clearly can result whether or not the maker of the threat has any intent to carry it out.

*Kepiro*, 61 Wn. App. at 123.

In *Hansen*, the Supreme Court held RCW 9A.72.160(1) did not include a requirement that the defendant have intent or knowledge that the threat reach the judge. *Hansen*, 122 Wn.2d at 717. As the Supreme Court further reasoned:

> [W]hoever threatens a judge, either directly or indirectly, e.g., through a third person, because of an official ruling or decision by that particular judge, is chargeable under RCW 9A.72.160. The threat may ultimately find its way to the judge, but that is irrelevant with regards to the commission of the crime.

*Hansen*, 122 Wn.2d at 718.

The holdings set forth in *Edwards*, *Kepiro*, and *Hansen* provide support for the State's interpretation of RCW 28A.635.100. The structure of RCW 28A.635.100 indicates that intent to *carry out* the threat is not an element. *Kepiro*, 61 Wn. App. at 123. The prohibited act is intimidation by means of threat of violence or force. *See* 47 WASH. L. REV., *supra*, at 503-04.

Because the purpose of RCW 28A.635.100 is to prevent disruptive intimidation, the defendant need not communicate the threat directly; it is enough that the teacher learn of the threat from others. *Hansen*, 122 Wn.2d at 718. The harm is the intimidating and disruptive effect the statement has on the teacher; thus, the speaker's intent or knowledge that the statement reach the teacher is irrelevant. *Id.*

But we also conclude RCW 28A.635.100 contains an implied element of intent to utter the intimidating threat. *See Kepiro*, 61 Wn. App. at 122 (approving jury instruction requiring proof of defendant's intent to communicate words constituting threat). Even though generally, an appellate court will not infer criminal intent "where the Legislature defines a crime as punishable by conduct alone." *Id.* at 121 (citing *State v. Elmore*, 54 Wn. App. 54, 771 P.2d 1192 (1989)). An exception is recognized when innocent conduct might be punishable without a specific finding of evil intent or guilty knowledge. *Kepiro*, 61 Wn. App. at 121.

It is quite conceivable a particularly young or immature student engaging in horseplay could inadvertently utter a threat without "evil intent or guilty knowledge." *See Bash*, 130 Wn.2d 594, 605, 925 P.2d 978 (1996) (reviewing court must consider whether strict liability reading of crime would encompass innocent conduct). Logically, it follows that a violation of RCW 28A.635.100 requires proof the speaker intended to utter the threat. *Kepiro*, 61 Wn. App. at 122. But in light of the Legislature's clear rejection of willfulness as an element, we are not persuaded that intent to actually intimidate is required. *See Bash*, 130 Wn.2d at 604-05 ("deciding whether a statute sets forth a strict liability crime is a statutory construction question aimed at ascertaining legislative intent").

For example, a student could intentionally utter a secret desire to kill a teacher to another student without intending the threat to reach the ears of the teacher. But if such a threat does reach the teacher, the teacher may be intimidated. This interpretation is consistent with the Legislature's intent to avoid school disruptions and protect persons in school environments from being intimidated by threats of force and violence. Accordingly, we conclude it is not necessary to prove the speaker of the threat intended to intimidate the target of the threat.

 ██ Additionally, we conclude RCW 28A.635.100 requires proof that the threat did intimidate the recipient. *See* 47 WASH. L. REV., *supra*, at 503-04; *see also State v. Stephenson*, 89 Wn. App. 794, 807, 950 P.2d 38 (stating defendant's "attempt to influence" targeted public servant's behavior "critical element" of intimidating public servant statute, RCW 9A.76.180), *review denied*, 136 Wn.2d 1018 (1998). As explained above, the State's contention that RCW 28A.635.100 prohibits threats alone is unpersuasive; it renders the phrase "to intimidate" superfluous. *See Bash*, 130 Wn.2d at 602 (appellate court must construe statute so as not to render any part of it meaningless or superfluous).

 The State's position would seem to have merit if

this were a prosecution under the companion statute, RCW 28A.635.090, as that is directed to disruptive interference with school activities without a showing of intimidation. This is another reason for our interpretation of RCW 28A.635.100 as the two provisions are read together so as not to conflict. *Fray v. Spokane County*, 134 Wn.2d 637, 649, 952 P.2d 601 (1998).

Mr. Avila makes a passing reference to the dangers of an overbroad statute infringing upon the First Amendment. But because he cites no authority on the issue and presents no reasoned argument, we do not address the constitutionality of the statute. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

In sum, the threat must pertain to force or violence. The State is not required to prove Mr. Avila intended to carry out the threat or intended to communicate the threat directly or indirectly to Mr. Kimes. However, proof is required of intent to utter the threat. And the State must prove the threat intimidated Mr. Kimes by placing him in reasonable fear of the threatened force or violence. Accordingly, we hold RCW 28A.635.100 requires the State to prove (1) Mr. Avila, (2) intending to make a threat, (3) did make a threat of force or violence, (4) that intimidated, (5) Mr. Kimes, a teacher, (6) while Mr. Kimes was peacefully discharging his teaching duties.

## B. Evidence Sufficiency

■ Next, we test the sufficiency of the evidence using the above standard. The juvenile court convicted Mr. Avila following an adjudicatory hearing. JuCR 7.11. The State must prove each element of the charged crime beyond a reasonable doubt. *State v. Alvarez*, 128 Wn.2d 1, 13, 904 P.2d 754 (1995); JuCR 7.11(a).

■ Particularly significant is the implied element of Mr. Avila's intent to utter a threat. "Evidence is sufficient to support an adjudication of guilt in a juvenile proceeding if any rational trier of fact, viewing the evidence in a light

most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Echeverria*, 85 Wn. App. 777, 782, 934 P.2d 1214 (1997) (citing, inter alia, *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980)).

Regarding the juvenile court's decision, JuCR 7.11(d) partly states:

> The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision.

On appeal, this court reviews the juvenile court's findings "to determine whether they are supported by substantial evidence, which is a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the allegation." *Echeverria*, 85 Wn. App. at 783 (citing *State v. Halstien*, 122 Wn.2d 109, 128-29, 857 P.2d 270 (1993)). Here, the juvenile court's findings of fact are unchallenged and are thus verities on appeal. *State v. Gentry*, 125 Wn.2d 570, 605, 888 P.2d 1105 (1995).

The language of JuCR 7.11(d) is mandatory. *Alvarez*, 128 Wn.2d at 16. The juvenile court's findings of fact and conclusions of law must specifically state the ultimate facts necessary to support a conviction. *Id.* at 17. Failure to adhere to JuCR 7.11(d) will result in remand for entry of sufficient findings of fact and conclusions of law. *Alvarez*, 128 Wn.2d at 19.

Here, the juvenile court did not enter findings of fact and conclusions of law regarding the ultimate facts whether Mr. Avila intended to utter the threatening statements, and whether those statements intimidated Mr. Kimes. Lack of findings requires remand for entry when the record contains facts supporting the missing findings. *Id.*; *see also State v. Hescock*, 98 Wn. App. 600, 606, 989 P.2d 1251 (1999) (noting *Alvarez* court "remanded where evidence supported conviction but trial court failed to enter findings of ultimate facts").

 The unchallenged findings show the incident occurred at a public school, when Mr. Kimes was engaged in his regular teaching activities, and that Mr. Avila said he wanted to blow off Mr. Kimes' head. Mr. Avila issued the threat to two students at different times. Further, Mr. Avila said he did not care if Ms. Scharpp reported the statement to Mr. Kimes. Mr. Kimes sent a referral slip to the school office regarding Mr. Avila's threat. Mr. Kimes contacted law enforcement authorities and sought a restraining order against Mr. Avila. Further, Mr. Kimes testified he notified the authorities because of his concern whether Mr. Avila would carry out his threat. Although the trial court specifically found Mr. Avila did not actually intend to convey the threat to Mr. Kimes, from this record, a reasonable trier of fact could find Mr. Avila intended the statements as threats. Last, a fact finder could decide from this record that the threatening statements intimidated Mr. Kimes. *See Alvarez*, 128 Wn.2d at 19. Thus, the evidence supports Mr. Avila's conviction.

In sum, although the evidence is sufficient to support Mr. Avila's conviction, we must, consistent with *Alvarez*, remand for "revision of findings to adequately state ultimate facts[.]" *Id.* "However, no additional evidence may be taken; the findings and conclusions are to be based on the evidence already taken." *State v. Head*, 136 Wn.2d 619, 625, 964 P.2d 1187 (1998) (citing *Alvarez*, 128 Wn.2d at 20-21).

## CONCLUSION

 We decide the evidence is sufficient to prove a violation of RCW 28A.635.100 under the elements discussed in this opinion. The trial court did not err by concluding it was unnecessary for the State to establish that Mr. Avila intended to convey his threats to Mr. Kimes. We affirm the conviction, however, remand for entry of additional ultimate findings. Because we affirm and remand, it is unnecessary to discuss in detail the failure to provide for Mr. Avila's allocution. We note his mother spoke

on his behalf at the original sentencing, and his sentence was well below the statutory maximum and has likely already been served. Under these facts, the juvenile court's inadvertent failure to offer Mr. Avila allocution constitutes harmless error. *State v. Gonzales*, 90 Wn. App. 852, 854-55, 954 P.2d 360, *review denied*, 136 Wn.2d 1024 (1998).

Conviction affirmed, remanded for entry of ultimate findings.

KURTZ, C.J., and SCHULTHEIS, J., concur.

Review denied at 143 Wn.2d 1009 (2001).