# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59322-0-II |
| Respondent, | |
| v. | |
| S.J., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — Following a fact-finding hearing, S.J. appeals her guilty adjudications for felony hit and run (injury) and third degree theft. S.J. argues that the juvenile court's failure to enter written findings of fact and conclusions of law require reversal and vacation of her disposition. S.J. also argues that the juvenile court violated her constitutional rights when it denied a motion for continuance to substitute counsel, insufficient evidence supports her guilty adjudications, and the juvenile court imposed unlawful community supervision conditions.

The record contains sufficient evidence to allow for appellate review of the issues raised. Because a court has wide latitude to grant or deny motions for continuance to substitute counsel and the juvenile court considered several relevant factors in its decision, the juvenile court did not err when it denied S.J.'s motion for a continuance to substitute counsel. And because the record shows that evidence of S.J.'s conduct met the elements of felony hit and run (injury) and third degree theft, sufficient evidence supports her guilty adjudications of those charges. Finally, because S.J.'s conditions furthered the purposes of the Juvenile Justice Act of 1977, chapter 13.40

RCW (JJA), the juvenile court did not err in imposing the challenged community supervision conditions. Accordingly, we affirm.

However, because the juvenile court failed to enter written findings of fact and conclusions of law as required by JuCR 7.11(d), we remand for the juvenile court to enter the required findings and conclusions consistent with its oral ruling. We also remand for the juvenile court to amend the order of adjudication and disposition to expressly state the term of S.J.'s community supervision consistent with its oral ruling.

## FACTS

### A.    BACKGROUND

On August 8, 2023, S.J., her boyfriend, and a friend pulled into a gas station in Kelso. The gas station was operated by Hung Sam Lim, a person of Korean descent.

S.J. and her friend walked into the store at the gas station to use the automated teller machine. Lim was not in the store when S.J. and her friend walked in.

Since she was in the store, S.J. thought she might purchase a slushie, so she decided to sample the slushies. S.J. did know which flavor she wanted and sampled the slushies because "[she does] this at normally every gas station . . . and nobody has a problem." Verbatim Rep. of Proc. (VRP) (Jan. 25, 2024) at 49. She grabbed a cup, valued at $2.99, and took three sample squirts: one of the "fruit punch" slushie and two of the "blue raspberry" slushie. Clerk's Papers (CP) at 5.

The store did not allow free samples, nor did S.J. ask Lim's permission to sample the slushies. And there were no signs indicating that free samples were offered.

2

As S.J. drank the slushie, Lim asked S.J. in English to pay for the slushie. Instead of paying, S.J. drank the remaining slushie, threw away the cup, and called Lim an "'Asian monkey'" before leaving the store. VRP (Jan. 25, 2024) at 36. S.J. then noticed that Lim began to get agitated. According to S.J., due to "a very bad language barrier," she did not understand Lim, so she "just chose to try to deescalate the situation and just leave." VRP (Jan. 25, 2024) at 50. S.J. and her friend walked out of the store and got back into S.J.'s car.

Lim followed S.J. out of the store. He wanted to photograph her license plate with the intention of trespassing her from the store. S.J.'s car had no license plate in the front, so Lim walked behind her car to photograph the license plate on the back. As he stood behind the car, S.J. slowly backed up her car towards Lim three times. Lim had to move each time.

S.J. was aware that Lim was photographing her license plate as she began backing up her car. She assumed Lim "got . . . the information he needed" and she was "confused as to why [Lim] was still there because [she] didn't really consider [herself] shoplifting." VRP (Jan. 25, 2024) at 51. As S.J. backed out of her parking spot, Lim moved to the side and then walked in front of S.J.'s car. Lim stood in front of S.J.'s vehicle to get a clear look at S.J.'s face.

According to S.J., she drove the car forward slowly even though there was enough room for her to back up her vehicle. S.J. "was conscious about how fast [she] was going," and she "tried not to go over one mile an hour." VRP (Jan. 25, 2024) at 55. According to Lim, S.J. grinned at him, showed him her middle finger, then drove into him. Lim fell to the ground. S.J. thought Lim had intentionally jumped on her car and exaggerated a fall.

3

After Lim fell, S.J. backed up her car and drove away from the gas station. Lim sustained knee and neck injuries from his fall. S.J. did not return to the gas station to assist Lim or to provide her name or other information.

B.    PROCEDURAL HISTORY

In September 2023, the State charged S.J. with one count of felony hit and run and one count of third degree theft. The juvenile court appointed counsel for S.J.

Following S.J.'s arraignment on September 26, the juvenile court scheduled subsequent hearings for October and November 2023, with the fact-finding hearing set for November 16, 2023, which did not occur. Instead, on December 5, 2023, S.J. waived her right to a speedy trial.[1]

1.    Fact-Finding Hearing

On January 25, 2024, the juvenile court held the fact-finding hearing. At the beginning of the hearing, S.J. arrived with a new attorney who requested to substitute for S.J.'s appointed counsel. In addition to the request to substitute, the attorney asked for a continuance:

> Judge, I was contacted by [S.J.]'s family yesterday. And I understand that this is late in the process. But they indicate a desire to have counsel of [S.J.]'s own choosing represent her. I explained that without having, you know, time to adequately prepare, I would not be able to represent her at the fact-finding, but if the Court were to grant a continuance, that I would be happy to substitute in and represent [S.J.]. That would be our request. And I understand that there's an interpreter, and I understand that, you know, this is generally late. But given her desire and now her family's ability to do so, that would be [S.J.]'s request.

---

[1] There is nothing in the record that explains why S.J.'s fact-finding hearing did not occur in November or why she waived her right to a speedy trial in December.

4

VRP (Jan. 25, 2024) at 4-5. S.J. did not provide the juvenile court with any explanation for wanting to substitute counsel or why the request was made so "late in the process." VRP (Jan. 25, 2024) at 4.

The juvenile court asked S.J.'s appointed counsel whether he knew at any point leading up to the fact-finding hearing that S.J. intended to seek outside counsel. S.J.'s appointed counsel responded in the negative.

The State objected to a continuance, citing the late notice of the request, the presence of an out-of-town interpreter for the fact-finding hearing, and Lim's difficulty in taking time off work to testify at trial.

The juvenile court ruled:

> Okay. So, a couple of things—it looks like this is . . . the third trial setting. This is—the allegations stem from, I think, September of last year, 2023. And all indications are that it was—it was a go. The readiness hearing it was a go. The pretrial—or, the hearing before that it was a go. There's a Korean interpreter that's present. And so, I'm going to deny the request. We're going to proceed with trial today.

VRP (Jan. 25, 2024) at 5-6.

The matter then proceeded to the fact-finding hearing. Lim, S.J., and S.J.'s boyfriend, among others, testified. Following testimony, the juvenile court made an oral ruling. On S.J.'s hit and run (injury) charge, the juvenile court ruled, in relevant part:

> I think there was an accident. . . . [S.J.] intended to run over [Lim] and hit him, and she did. . . . I think the accident . . . is established beyond a reasonable doubt. She knew she was involved . . . in that accident, and it's reasonable to assume . . . when somebody falls on the ground and remained on the ground for several seconds that injury occurred, especially when you're using . . . a 3,000 pound missile. So . . . that's established that there was knowledge that she was involved in an accident with an injury to Mr. Lim.

No. 59322-0-II

VRP (Jan. 25, 2024) at 87.  The juvenile court then addressed S.J.'s theft charge:

> [T]he Theft, you know, if it was standing on alone, let bygones be bygones.  In context, the State established that on August 8th, there was an intentional deprivation of property that belonged to Mr. Lim.  Was it minimal?  Yeah.  Probably cost 25 cents, if that.  The slush[ie] materials: water, sugar, and food coloring.  Can't be very expensive.  However, there's other costs involved in running a business, and there's no threshold. . . . So, was there an—an intention to deprive that property from . . . Mr. Lim?  Yeah, because I think even when . . . there was the miscommunication or possible miscommunication issues leaving, if there [were] concerns about hey, did you want me to pay for that, that's usually, you know, you get called out . . . after you've consumed something that maybe you shouldn't have sampled. . . . You kind of stop and you try to figure it out.  But, if you're worried that, hey, I didn't pay for it and . . . I'm not going to pay for it, and I don't want to pay for it, then you just leave.  I think that's what happened.  So, she wrongfully obtained that property from another, Mr. Lim.

VRP (Jan. 25, 2024) at 88-89.  The juvenile court adjudicated S.J. guilty of both charges.

2.      Sentencing

S.J. was sentenced on February 6, 2024.  During the hearing, the State requested S.J. serve 30 days of detention.  S.J. requested community service and work crew.  S.J.'s counsel stated:

> I talked to [S.J.'s] mom.  She said [S.J.] is trying to do good.  She's doing well in school, is working her job.  So, we're asking Your Honor just to impose community service so she can give back to the community for this, and do some work crew as well, and she's willing to write an apology letter.  We'd ask Your Honor to impose those terms.

VRP (Feb. 6, 2024) at 96.

The juvenile court inquired into S.J.'s circumstances regarding her job, school, and whether she would like to address the court.  The juvenile court also noted that S.J. had two recent diversions for offenses in 2021 and 2022.

Based on the juvenile court's conversation with S.J., it imposed 11 days of work crew, 6 days of detention, to be served on weekends, and 12 months of community supervision.

6

Additionally, the juvenile court imposed several conditions of community supervision and talked

through each of them. The conditions pertinent to this appeal included:

G.    . . . Respondent shall *not use or possess firearms, ammunition, or other dangerous weapons* during this period of community supervision. The probation counselor is authorized to search Respondent and items carried or controlled by Respondent at scheduled appointments and other reasonable times, and may specify in writing further details of this prohibition.

. . . .

J.    . . . Respondent shall refrain from using drugs and alcohol and is subject to *random urinalysis, PBT, and oral swab* as directed by the probation counselor or substance abuse treatment provider and shall fully cooperate.

. . . .

N.    . . . Respondent shall not knowingly associate with any person, adult or juvenile, who is under the supervision of any court of this or any other state for any juvenile offense or crime unless approved by probation counselor.

CP at 14 (italics and boldface in original).

S.J. appeals.

ANALYSIS

S.J. raises several challenges on appeal: (1) the juvenile court failed to enter written

findings of fact and conclusions of law as required by JuCr 7.11(d), (2) the juvenile court erred

when it denied her a continuance to substitute counsel, (3) insufficient evidence supported her

guilty adjudications for felony hit and run (injury) and third degree theft, and (4) the juvenile court

erred in imposing certain conditions of community supervision.

A.    FAILURE TO ENTER WRITTEN FINDINGS AND CONCLUSIONS

S.J. argues that the juvenile court's failure to enter written findings of fact and conclusions

of law in accordance with JuCR 7.11(d) requires reversal and vacation of her disposition. The

State concedes that the juvenile court failed to enter written findings and conclusions but argues

that the juvenile court's oral record allows for sufficient review.

1.      Legal Principles

JuCR 7.11(d) provides:

The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal.

The language of JuCR 7.11(d) is mandatory, and failure of a juvenile court to enter written findings

and conclusions constitutes error. *State v. Avila*, 102 Wn. App. 882, 896, 10 P.3d 486 (2000),

*review denied*, 143 Wn.2d 1009 (2001); *see State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754

(1995).

However, when the record contains sufficient evidence to support an adjudication of guilt,

the failure to comply with JuCR7.11(d) is remedied by remand for entry of findings. *Avila*, 102

Wn. App. at 896; *accord Alvarez*, 128 Wn.2d at 19; *State v. Ware*, 111 Wn. App. 738, 746, 46

P.3d 280 (2002). "'[N]o additional evidence may be taken; the findings and conclusions are to be

based on the evidence already taken.'" *Avila*, 102 Wn. App. at 897 (quoting *State v. Head*, 136

Wn.2d 619, 625, 964 P.2d 1187 (1998)).

2.      Remand for Entry for Findings

Here, there is no dispute that the juvenile court failed to comply with JuCR 7.11(d) when

it did not enter written findings and conclusions. However, the juvenile court made extensive oral

findings. Additionally, for the reasons discussed below, sufficient evidence in the record supports

S.J.'s adjudication of guilt on both charges.  Thus, the remedy is to remand for entry of written findings of fact and conclusions of law consistent with its oral ruling.  *Id.* at 896; *accord Alvarez*, 128 Wn.2d at 19; *Ware*, 111 Wn. App. at 746.

B.      DENIAL OF CONTINUANCE

S.J. argues that the juvenile court violated her Sixth Amendment and Fourteenth Amendment rights when it denied her request for a continuance to substitute counsel for her counsel of choice.  We disagree.

1.      Legal Principles

Trial courts have wide latitude to grant or deny a motion for continuance related to a defendant's request to change counsel.  *State v. Hampton*, 184 Wn.2d 656, 660, 361 P.3d 734 (2015), *cert. denied*, 578 U.S. 948 (2016).  Courts "must weigh the defendant's right to choose his counsel against the public's interest in the prompt and efficient administration of justice." *State v. Aguirre*, 168 Wn.2d 350, 365, 229 P.3d 669 (2010).  We review such decisions for abuse of discretion.  *Hampton*, 184 Wn.2d at 670.  An abuse of discretion occurs when a trial court's decision "is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons." *State v. W.H.*, 33 Wn. App. 2d 785, 791, 564 P.3d 992 (2025).

The Sixth Amendment right to assistance of counsel generally includes a defendant's right to his or her private counsel of choice.  *Hampton*, 184 Wn.2d at 662; *State v. Johnston*, 143 Wn. App. 1, 22, 177 P.3d 1127 (2007) (stating courts begin with "a presumption in favor of the counsel of defendant's choice").  However, that right is not absolute.  *Hampton*, 184 Wn.2d at 663.[2]

---

[2]  For instance, a defendant cannot insist on representation by one who is not a licensed attorney. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006);

In weighing a defendant's right to choose his or her counsel against the efficient administration of justice, trial courts should engage in a balancing exercise that "consider[s] the factual context for the motion." *Id.* at 660. It is a highly fact-specific inquiry based on a defendant's individual circumstances, and trial courts may consider all relevant information. *Id.* at 669.

The Washington Supreme Court has identified 11 non-exclusive factors courts may consider:

> (1) whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar;
> (2) the length of the continuance requested;
> (3) whether the continuance would carry the trial date beyond the period specified in the state speedy trial act;
> (4) whether the court had granted previous continuances at the defendant's request;
> (5) whether the continuance would seriously inconvenience the witnesses;
> (6) whether the continuance request was made promptly after the defendant first became aware of the grounds advanced for discharging his or her counsel;
> (7) whether the defendant's own negligence placed him or her in a situation where he or she needed a continuance to obtain new counsel;
> (8) whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation;
> (9) whether there was a "'rational basis'" for believing that the defendant was seeking to change counsel "'primarily for the purpose of delay'";
> (10) whether the current counsel was prepared to go to trial;
> (11) whether denial of the motion was likely to result in identifiable prejudice to the defendant's case of a material or substantial nature.

*Id.* at 669-70 (quoting 3 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 11.4(c) 718-20 (3d ed. 2007)). "Not all factors will be present in all cases, and thus a trial court need not evaluate every factor in every case." *Id.* at 670.

---

*Hampton*, 184 Wn.2d at 663. Nor can a defendant insist on representation by an attorney he or she cannot afford. *State v. Sanchez*, 171 Wn. App. 518, 541, 288 P.3d 351 (2012).

2.  No Abuse of Discretion

S.J. argues that the juvenile court abused its discretion when it failed to consider all "necessary information" and conduct an adequate inquiry on the record when it denied her request for a continuance to substitute counsel.  Br. of Appellant at 17.  We disagree.

Here, the record shows that S.J.'s fact-finding hearing had already been continued two times.  The record also shows that S.J.'s family contacted the private attorney the day before the fact-finding hearing.  In the private attorney's request for a continuance, he stated: "I understand that, you know, this is generally late.  But given [S.J.'s] desire [for private counsel] and now her family's ability to do so, that would be [S.J.]'s request."  VRP (Jan. 25, 2024) at 4-5.  While this statement may imply that up until the eve of the fact-finding hearing, S.J.'s family was unable to afford private counsel, the private attorney never elaborated on what he meant by S.J.'s "family's ability to" now retain private counsel or how long S.J.'s family had been attempting to secure private counsel.

Neither S.J.'s appointed counsel nor the State, let alone the juvenile court, were aware that S.J. wished to proceed with a private attorney prior to the day of the fact-finding hearing.  Both the appointed counsel and the State were ready to proceed.  The State objected to S.J.'s untimely request and informed the court that Lim was present and that it was difficult for Lim to get time off of work.  And an out-of-town interpreter was also present and ready to proceed with the fact-finding hearing.

After hearing from the parties, the juvenile court stated that the case was four months old and that this was "the third trial setting."  VRP (Jan. 25, 2024) at 5.  The court also stated that the record showed that the case was ready to proceed at both the readiness hearing and pre-trial

hearing. And the court stated that there was a Korean interpreter present. The court denied the request for a continuance and decided "to proceed with trial today." VRP (Jan. 25, 2024) at 6.

S.J. argues that the juvenile court should have asked her directly why she wished for private counsel and that the juvenile court failed to conduct an adequate inquiry into "all relevant information." Br. of Appellant at 17. S.J. points to the 11 factors outlined in *Hampton* as included in the "relevant information" that a court "must" consider. Br. of Appellant at 20.

Contrary to S.J.'s assertion, *Hampton* does not *require* a court to consider all 11 factors. *Hampton*, 184 Wn.2d at 669. Instead, the Washington Supreme Court stated that "trial courts *can* consider all relevant information," including but not limited to the 11 factors, and "a trial court *need not* evaluate every factor in every case." *Id.* at 669-70 (emphasis added). Moreover, a trial court possesses "wide latitude" in its decision to grant or deny a continuance. *Id.* at 660.

Here, although the juvenile court's record was brief, it is evident that the juvenile court considered (1) the fact that S.J. never previously voiced a desire for private counsel to either her appointed attorney or the court; (2) S.J.'s fact-finding hearing had already been continued two times; (3) S.J. made the request for a continuance on the morning of the fact-finding hearing; (4) S.J.'s counsel and the State were both prepared to proceed; and (5) there were multiple schedules to coordinate, including the schedules of Lim and the interpreter.

Thus, the record shows that the juvenile court considered several of the 11 factors outlined in *Hampton*. Further, there is no requirement for the juvenile court to consider every factor outlined in *Hampton* or to ask why S.J. wanted new counsel. *Id.* at 669-70.

S.J. also asserts that there is an additional burden on the court in the juvenile context to conduct an "adequate inquiry" because juveniles "cannot be expected to know what information

to convey to the court or to have the courage to speak up." Br. of Appellant at 26, 28. S.J. alleges that the juvenile court relied on a "lack of volunteered information" from S.J. when it denied her request. Br. of Appellant at 28. However, S.J.'s argument is belied by the record, and further, S.J.'s argument relies on the assumption that had the juvenile court addressed her directly, it would have granted the continuance.

The record shows that the juvenile court did not rely on S.J.'s silence alone and instead considered several factors, all of which were reasonable and relevant. Moreover, even if S.J. was unaware of what information to convey to the court or lacked the courage to do so, the private attorney who made the request for the continuance on her behalf was present to provide guidance. Finally, even if S.J. elaborated as to why she wished for private counsel, in light of the other considerations articulated by the juvenile court, it is not clear that a continuance would have been granted.

S.J.'s challenge appears to stem solely from the brevity of the juvenile court's record. While we agree the record regarding the juvenile court's considerations was brief, the considerations were not so brief as to make the juvenile court's decision manifestly unreasonable.

Thus, even with the presumption in favor of S.J.'s counsel of choice, the juvenile court's denial of a continuance was not "'so arbitrary as to violate due process.'" *Hampton*, 184 Wn.2d at 663 (quoting *Ungar v. Sarafite*, 376 U.S 575,. 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)). In light of a trial court's wide latitude to grant or deny requests for continuances to change counsel, we hold that the juvenile court did not abuse its discretion.

C.     SUFFICIENCY OF THE EVIDENCE

1.     Legal Principles

The State bears the burden of proving each element of an alleged offense beyond a reasonable doubt. *Ware*, 111 Wn. App. at 741. "'Evidence is sufficient to support an adjudication of guilt in a juvenile proceeding if any rational trier of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *State v. Echeverria*, 85 Wn. App. 777, 782, 934 P.2d 1214 (1997)). We determine whether substantial evidence supports the findings of fact, and if so, whether those findings support the conclusions of law. *State v. Johal*, 33 Wn. App. 2d 408, 412, 561 P.3d 1235, *review denied*, 569 P.3d 729 (2025).

Claims of insufficient evidence admit the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Hanley*, 33 Wn. App. 2d 99, 110-11, 559 P.3d 559 (2024). Direct evidence and circumstantial evidence carry equal weight. *State v. Sanchez*, 31 Wn. App. 2d 372, 380, 554 P.3d 373 (2024), *review denied*, 4 Wn.3d 1004 (2025). Additionally, courts "defer to the finder of fact on issues of witness credibility, conflicting testimony, and the persuasiveness of the evidence." *Hanley*, 33 Wn. App. 2d at 111.

2.     Felony Hit and Run (Injury)

S.J. argues there is insufficient evidence to support her guilty adjudication under RCW 46.52.020(4)(b) because she did not know she caused an accident, triggering her duty to stop. We disagree.

14

a. Legal principles

RCW 46.52.020 provides for the duties of drivers involved in accidents. Specifically, RCW 46.52.020(1) states, in relevant part:

A driver of any vehicle involved in an accident resulting in the injury to . . . any person . . . shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he or she has fulfilled the requirements of subsection (3) of this section; every such stop shall be made without obstructing traffic more than is necessary.

RCW 46.52.020(3) provides, in relevant part:

[T]he driver of any vehicle involved in an accident resulting in injury to . . . any person . . . shall give his or her name, address, insurance company, insurance policy number, and vehicle license number and shall exhibit his or her vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his or her behalf. Under no circumstances shall the rendering of assistance or other compliance with the provisions of this subsection be evidence of the liability of any driver for such accident.

Any driver who fails to stop in the circumstances described in RCW 46.52.020(1) or comply with the requirements in RCW 46.52.020(3) when injury has resulted from the accident is guilty of a class C felony. RCW 46.52.020(4)(b). Thus, the State has the burden to prove that "(1) a motor vehicle was driven in Washington; (2) the vehicle was involved in an accident; (3) injury or death resulted from the accident; and (4) the driver failed to immediately stop." *State v. Silva*, 106 Wn. App. 586, 590, 24 P.3d 477, *review denied*, 145 Wn.2d 1012 (2001).

"The purpose of the hit-and-run statute is to assure that drivers stop and give aid and information." *State v. Perebeynos*, 121 Wn. App. 189, 191, 87 P.3d 1216 (2004), *review granted*,

15

153 Wn.2d 1002 (2005), *and dismissed as improvidently granted*, No. 75517-5 (Wash. Apr. 1, 2005). The statute does not penalize driving; rather, it penalizes the failure to stop and return to the scene. *Id.* "[A] driver is subject to a felony conviction if he leaves the scene of an injury accident when he has knowledge of the accident." *State v. Vela*, 100 Wn.2d 636, 640, 673 P.2d 185 (1983). The driver need not know of any injury; "[k]nowledge of the accident is all the knowledge that the law requires." *Id.* at 641.

An accident within the meaning of the statute encompasses both accidental and intentional conduct. *Silva*, 106 Wn. App. at 591, 594-95. A person acts knowingly if "[h]e or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense" or "[h]e or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b). Furthermore, "[k]nowledge may be inferred from circumstantial evidence." *Perebeynos*, 121 Wn. App. at 196.

> b.  Sufficient evidence that S.J. had knowledge of accident

S.J. argues there is insufficient evidence that she "knew or should have known that the contact between her car and Mr. Lim was an accident resulting in a duty to stop—in other words, an accident causing injury to Mr. Lim." Br. of Appellant at 38-39. We disagree.

Here, the record shows that S.J. drove her car into Lim and Lim fell to the ground from the contact. An accident under RCW 46.52.020 can include intentional conduct. *Silva*, 106 Wn. App. at 594-95. Further, S.J. does not dispute the occurrence of an accident. Therefore, there was an accident.

S.J. testified that although she did not think she "revved [the car] really hard," she did recall Lim "was just standing there in front of [her] car," her vehicle making contact with Lim, and seeing Lim on the ground. VRP (Jan. 25, 2024) at 54, 56. Because S.J. deliberately drove towards Lim, saw the contact between her car and Lim, and saw Lim fall to the ground, the record shows that S.J. was aware of an accident. A person has knowledge when they have "information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b)(ii). A reasonable person, having just hit another person with their car, would believe that they were involved in an accident.

The record also shows that after S.J. hit Lim, S.J. backed up her car, drove away from the gas station, and did not return. While Lim did not seek medical help, Lim testified that he sustained knee and neck injuries from his fall. S.J.'s boyfriend testified that after Lim had fallen to the ground, it appeared that Lim was "touching his left leg." VRP (Jan. 25, 2024) at 45. Therefore, viewing the evidence in the record, and all reasonable inferences therefrom, in a light most favorable to the state, the evidence shows that Lim was injured. While both S.J. and her boyfriend testified that they did not believe Lim was injured when he had fallen to the ground, knowledge of injury is not required. *Vela*, 100 Wn.2d at 641. Moreover, S.J.'s argument that Lim exaggerated his injury shows she knew Lim was injured and was only disputing the extent of injuries. Also, S.J.'s arguments implicate a credibility determination. We defer to the "finder of fact on issues of witness credibility, conflicting testimony, and the persuasiveness of the evidence." *Hanley*, 33 Wn. App. 2d at 111.

In her brief, S.J. makes much of when the duty to stop is triggered because not all accidents require stopping. S.J. cites examples such as a driver tapping the bumper of a parked vehicle with

17

his or her own car where no damage results. However, a brief review of the statutory scheme shows that any time a driver strikes or is involved in an accident with another vehicle, property, or person, there is a duty to stop.[3] *See generally* RCW 46.52.010; RCW 46.52.020. S.J.'s argument misses the point of the statute, which is "to assure that drivers stop and give aid and information." *Perebeynos*, 121 Wn. App. at 191. It is knowledge of involvement in an accident, coupled with the failure to stop at all, that violates the statute—not any resulting injury. *Vela*, 100 Wn.2d at 641 ("If a motorist knows he has been involved in an accident and fails to stop, he is guilty of violating RCW 46.52.020.").

Because the record establishes that S.J. had knowledge that she was involved in an accident and that she failed to stop, sufficient evidence supports her guilty adjudication of felony hit and run (injury) under RCW 46.52.020.

3. Third Degree Theft

S.J. argues that insufficient evidence supports her guilty adjudication of third degree theft because the State failed to disprove S.J.'s "claim of right" to the slushie she consumed. Br. of Appellant at 40. Specifically, S.J. contends "that she openly took the sips of slushie under a good

---

[3] For example, in the case of S.J.'s example of a driver and her vehicle tapping the bumper of a parked vehicle, RCW 46.52.010(1) provides:

> The operator of any vehicle which collided with any other vehicle which is unattended *shall immediately stop* and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the operator and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice, giving the name and address of the operator and of the owner of the vehicle striking such other vehicle.

(Emphasis added.)

faith belief that she was entitled to do so, as a matter of common practice." Br. of Appellant at 42. We disagree.

a.      Legal principles

Under RCW 9A.56.020, theft occurs when a person "wrongfully obtain[s] or exert[s] unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a); *Hanley*, 33 Wn. App. 2d at 109 ("The defendant commits theft when she exerts control over an item absent permission of one who holds an interest in the item."). A person is guilty of third degree theft if the property or services wrongfully obtained do not exceed $750. RCW 9A.56.050.

However, "[i]n any prosecution for theft, it shall be a sufficient defense that . . . [t]he property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable." RCW 9A.56.020(2)(a). "This defense negates the essential element of intent to steal" and "a defendant cannot be guilty of theft if he or she takes property under a good faith subjective belief that he or she has the rights of ownership or is entitled to possession of the property." *State v. Mora*, 110 Wn. App. 850, 855, 43 P.3d 38, *review denied*, 147 Wn.2d 1021 (2002).

b.      S.J.'s "claim of right" defense fails

The record shows that S.J. took three samples of slushie using a cup valued at $2.99. She did not ask for permission to take samples nor were there any signs in the store indicating that the store offered free samples. Lim asked S.J. in English to pay for the slushie she was drinking. Instead of paying, S.J. finished drinking what was in the cup, threw away the cup, called Lim an

"Asian monkey," and walked out of the store. VRP (Jan. 25, 2024) at 23. The record shows that S.J. wrongfully obtained the property of another. RCW 9A.56.020(1)(a).

S.J. asserts that she believed sampling slushies at gas stations was "a generally permissible and accepted practice" and that she did not do "anything to hide the fact that she took sips of the slushie before she paid for them." Br. of Appellant at 43. Thus, according to S.J., she had a good faith belief that she had the right to sample the slushie. However, S.J.'s assertion is not supported by the evidence.

Again, the record shows there were no signs in the store indicating that the store offered free samples and Lim asked S.J. in English to pay for the slushie. Instead of paying, S.J. drank the remainder of the slushie in the cup, threw the cup away, and left the store. Viewing the evidence in a light most favorable to the State, as we must, a reasonable inference arises that S.J. understood exactly why Lim was upset and she simply did not want to pay for the slushie she was consuming, belying any assertion on her part about a good faith belief in free slushie samples. *Hanley*, 33 Wn. App. 2d at 110-11; *Ware*, 111 Wn. App. at 741.

Even if there was some confusion on S.J.'s part due to a language barrier as to Lim's request that she pay for the slushie, the evidence still fails to support S.J.'s "claim of right" defense. As the juvenile court noted about S.J.'s actions:

> I think even when . . . there was the miscommunication or possible miscommunication issues leaving, if there [were] concerns about hey, did you want me to pay for that, that's usually, you know, you get called out . . . after you've consumed something that maybe you shouldn't have sampled. . . . You kind of stop and you try to figure it out. But, if you're worried that, hey, I didn't pay for it and . . . I'm not going to pay for it, and I don't want to pay for it, then you just leave. I think that's what happened.

VRP (Jan. 25, 2024) at 89.

Viewing the evidence in the light most favorable to the State, we hold that sufficient evidence supports S.J.'s guilty adjudication of third degree theft and that S.J.'s "claim of right" defense fails.

D.    COMMUNITY SUPERVISION CONDITIONS

S.J. argues that the juvenile court abused its discretion when it failed to create an individualized disposition for S.J. and when it imposed unlawful and unnecessary conditions which violate her right to privacy and due process. We disagree.

1.    Legal Principles

The JJA is a statutory scheme intended to respond to the needs of youthful offenders and their victims. RCW 13.40.010. Among the JJA's purposes are to hold juvenile offenders accountable for their crimes and to foster their rehabilitation. RCW 13.40.010(c), (f); *State v. K.H.-H.*, 185 Wn.2d 745, 754, 374 P.3d 1141 (2016).

Community supervision is an order of disposition from the juvenile court for juveniles not committed to a detention facility. RCW 13.40.020(5). It may last up to one year for a single, non-sex offense. RCW 13.40.020(5). Community supervision is an individualized program that can include monitoring and reporting requirements. RCW 13.40.020(5)(c). "Monitoring and reporting requirements" means

> one or more of the following: Curfews; requirements to remain at home, school, work, or court-ordered treatment programs during specified hours; restrictions from leaving or entering specified geographical areas; requirements to report to the probation officer as directed and to remain under the probation officer's supervision; and other conditions or limitations as the court may require which may not include confinement.

RCW 13.40.020(22). Monitoring and reporting requirements may also include restrictions on contact with certain classes of individuals. *State v. H.E.J.*, 102 Wn. App. 84, 89, 9 P.3d 835 (2000).

Juvenile courts have wide latitude and discretion when imposing community supervision conditions. *K.H.-H.*, 185 Wn.2d at 755. Unlike conditions in an adult context, conditions imposed on juveniles need not be directly crime-related. *H.E.J.*, 102 Wn. App. at 89. A juvenile court may impose "any conditions of supervision it deems necessary to meet the needs of the juvenile and to effectuate the rehabilitative and accountability goals of the JJA." *State v. S.D.H.*, 17 Wn. App. 2d 123, 132, 484 P.3d 538, *review denied*, 198 Wn.2d 1006 (2021). We review the imposition of community supervision conditions for an abuse of discretion. *State v. J.H.-M.*, 28 Wn. App. 2d 757, 761, 538 P.3d 644 (2023), *aff'd*, 566 P.3d 847 (2025).

2.     Term of Community Supervision

S.J. argues that the juvenile court failed to set the term of her community supervision in its order of adjudication and disposition, and this court must remand to the juvenile court to clarify. The State concedes that the juvenile court failed to provide for the term of community supervision in its order, but asserts that it was a scrivener's error. The State argues that the juvenile court made an oral record that S.J.'s community supervision term was 12 months, and asks that this court to remand "for the purpose of amending the disposition order" to reflect the juvenile court's oral ruling. Br. of Resp't at 20.

S.J. is correct that her order of adjudication and disposition does not include the term of her community supervision. And the State is correct that the juvenile court orally ordered 12 months of community supervision. The juvenile court's oral ruling is consistent with RCW

13.40.020(5), which provides that community supervision may last up to one year for non-sex offenses. *See also* RCW 13.40.020(20)(b).

When a sentence or disposition is insufficiently specific about the period of community placement, a remand to the trial court to expressly state the term in its order is all that is required. *State v. Ramos*, 171 Wn.2d 46, 48, 246 P.3d 811 (2011). Thus, we remand to the juvenile court to amend the order of adjudication and disposition to expressly state the term of S.J.'s community supervision consistent with its oral ruling.

3.      Refrain from Use of Alcohol and Drugs and Random Urinalyses

S.J. argues that the juvenile court abused its discretion when it imposed the condition that S.J. refrain from using drugs and alcohol because her underlying offenses had nothing to do with drug or alcohol use, nor does the record show that she struggles with substance abuse. Additionally, S.J. argues that the condition of random urinalyses (UAs) violates her right to privacy. The State argues that these conditions are appropriate because they further the interest of S.J. not committing new offenses. We agree with the State.

Here, on S.J.'s order of adjudication and disposition, Condition J stated:

> Respondent shall refrain from using drugs and alcohol and is subject to ***random urinalysis, PBT, and oral swab*** as directed by the probation counselor or substance abuse treatment provider and shall fully cooperate.

CP at 14 (italics and boldface in original).

Nothing in the record suggests that alcohol or drugs were related to S.J.'s offenses. However, in the juvenile context, "the JJA permits juvenile courts to impose any conditions of supervision it deems necessary to meet the needs of the juvenile and to effectuate the rehabilitative and accountability goals of the JJA." *S.D.H.*, 17 Wn. App. 2d at 131-32; *H.E.J.*, 102 Wn. App. at

89. Juvenile courts have wide latitude when imposing those conditions. *K.H.-H.*, 185 Wn.2d at 755.

The record shows that S.J. is still a minor. Indeed, she cannot legally drink alcohol. *See* RCW 66.44.270(3)(a). Moreover, "[a]s a *mandatory condition* of any term of community supervision, the court shall order the juvenile to refrain from *committing new offenses*." RCW 13.40.020(5) (emphasis added). If S.J. used drugs or alcohol, based on S.J.'s age, it would constitute a new offense. Thus, the condition that S.J. refrain from using drugs or alcohol is consistent with the accountability and rehabilitative purposes of the JJA. *See* RCW 13.40.010, .020(5); *S.D.H.*, 17 Wn. App. 2d at 131-32. Therefore, the juvenile court did not abuse its discretion in imposing this condition.

S.J. next argues that the juvenile court's imposition of the condition subjecting her to random UAs violates her right to privacy. S.J. alleges that the condition constitutes "a fishing expedition." Br. of Appellant at 51.

However, the record shows that S.J.'s subjection to random UAs is not a condition in and of itself—it is part and parcel of the condition that she refrain from using drugs and alcohol. The construction and wording of Condition J make clear that any random UAs are within the scope of and in relation to drug and alcohol use. *See generally State v. Olsen*, 189 Wn.2d 118, 126-35, 399 P.3d 1141 (2017). S.J. acknowledges that random UAs are a permissible monitoring tool when there is a valid drug or alcohol prohibition condition.

For the reasons stated above, the condition that S.J. refrain from drug and alcohol use is a valid condition. Thus, the juvenile court did not err when it imposed random UAs to monitor the prohibition on S.J.'s drug and alcohol use.

4.      Submission to Searches

S.J. argues that the condition "allowing for the probation officer to search S.J. and items carried or controlled by S.J. at scheduled appointments and other reasonable times" constitutes a "suspicion-less" search and violates her right to privacy.  Br. of Appellant at 53.  We disagree.

S.J. takes the search condition entirely out of context.  Here, Condition G states:

> Respondent shall *not use or possess firearms, ammunition, or other dangerous weapons* during this period of community supervision.  The probation counselor is authorized to search Respondent and items carried or controlled by Respondent at scheduled appointments and other reasonable times, and may specify in writing further details of this prohibition.

CP at 14 (italics and boldface in original).  Thus, the record shows that the searches at "scheduled appointments or other reasonable times" are in the context of possessing firearms, ammunition, or other dangerous weapons.

Notably, S.J. does not challenge the condition prohibiting her possession of firearms, ammunition, or other dangerous weapons.  Indeed, S.J.'s guilty adjudication under RCW 46.52.020 constitutes a felony.  RCW 46.52.020(4)(b).  Individuals guilty of felonies are prohibited from possessing firearms.  *See generally* RCW 9.41.040.  The juvenile court noted this during S.J.'s sentencing hearing.

Again, juvenile courts have broad discretion to craft monitoring and reporting requirements to meet the accountability and rehabilitation goals of the JJA.  RCW 13.40.020(5)(c); *S.D.H.*, 17 Wn. App. 2d at 132.  The record makes clear that the search condition is a monitoring tool to ensure S.J.'s compliance with the condition that she not possess dangerous weapons.  Therefore, the juvenile court did not abuse its discretion in imposing the search condition.

5.      Association with Other Offenders

S.J. argues the condition that she not knowingly associate with other juvenile offenders is both unconstitutionally vague and overbroad.  Specifically, S.J. contends that it is an "impossible standard" for her to meet because she is still in high school and cannot choose her classmates.  Br. of Appellant at 55.  S.J. asserts that she "does not have guidance in how to abide by the condition," "the probation officer would have discretion to arbitrarily enforce the condition," and this ultimately would "unconstitutionally restrict[] her access to education and association."  Br. of Appellant at 56.  We disagree.

Condition N states:

Respondent shall not knowingly associate with any person, adult or juvenile, who is under the supervision of any court of this or any other state for any juvenile offense or crime unless approved by probation counselor.

CP at 14.

a.      Vagueness

"A sentencing condition is unconstitutionally vague if '(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement.'"  *J.H.-M.*, 28 Wn. App. 2d at 761 (quoting *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018)).  When assessing the meaning of a condition, the language of the condition cannot be considered in a vacuum; rather, the language must be considered in the context in which it is used.  *Id.* at 761-62.

We note that S.J. fails to articulate whether she makes a facial or as-applied vagueness challenge.  Regardless, she also fails to articulate what exactly within the condition is vague aside

26

from her blanket assertions that she "does not have guidance in how to abide by the condition, and the probation officer would have discretion to arbitrarily enforce the condition." Br. of Appellant at 56.

Contrary to S.J.'s blanket assertions, the language of Condition N provides sufficient guidelines. S.J. "shall not *knowingly* associate with any person" who is under the supervision of any court "*unless* approved by [a] probation counselor." CP at 14 (emphasis added). The proscribed conduct is clear: if S.J. is aware that a person with whom she has contact is also an offender and S.J. fails to obtain the approval of her probation counselor to interact with that person, then she will violate the condition. A person of ordinary intelligence can understand the prohibited conduct. *J.H.-M.*, 28 Wn. App. 2d at 761.

S.J. does not elaborate exactly how a probation officer could "arbitrarily enforce the condition." Br. of Appellant at 56. Indeed, if S.J. is *unaware* that a person with whom she has contact is also an offender, she simply cannot violate the condition. Based on the knowledge requirement, there is a sufficiently ascertainable standard to protect against arbitrary enforcement. *J.H.-M.*, 28 Wn. App. 2d at 761. Moreover, even if S.J. has knowledge that someone with whom she associates is also an offender, the condition allows S.J. to associate with that person by obtaining approval from her probation counselor. Thus, any concerns S.J. harbors regarding her high school classmates or restrictions on her "access to education and association" are unfounded. Accordingly, we hold that Condition N is not unconstitutionally vague.

b.      Overbreadth

The First Amendment, applied to states through the Fourteenth Amendment, protects "the right of the people peaceably to assemble." U.S. CONST. amend. I, amend. XIV; WASH. CONST.

art. I, § 4. A condition is unconstitutionally overbroad if it prohibits constitutionally protected activities. *J.H.-M.*, 28 Wn. App. 2d at 764. However, limitations on fundamental rights are permissible, "'provided they are imposed sensitively.'" *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021) (quoting *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). As previously stated, juvenile courts have wide latitude to craft conditions related to the rehabilitative and accountability goals of the JJA. *K.H.-H.*, 185 Wn.2d at 755.

Here, S.J. again fails to articulate whether she makes a facial or an as-applied challenge. Further, to the extent S.J. even makes an overbreadth argument,[4] the argument appears to be couched within a general assumption that Condition N prohibits her from associating with her peers in any circumstance. For the reasons discussed above, this assumption is inaccurate. While Condition N does implicate protected activities, it is narrowly tailored to circumstances in which S.J. has knowledge that someone is under the supervision of a court *and* she fails to obtain approval from her probation counselor. *Johnson*, 197 Wn.2d at 744. Moreover, as the State points outs, Condition N can be construed to further the purposes of the JJA insofar as not associating with other offenders decreases chances of recidivism. *K.H.-H.*, 185 Wn.2d at 755. Therefore, S.J.'s overbreadth challenge fails.

## CONCLUSION

We affirm. However, because the juvenile court failed to enter written findings of fact and conclusions of law as required by JuCR 7.11(d), we remand for the juvenile court to enter the required findings and conclusions consistent with its oral ruling. We also remand for the juvenile

---

[4] Indeed, the State interpreted and responded to S.J.'s brief as if she had only made a vagueness challenge.

court to amend the order of adjudication and disposition to expressly state the term of S.J.'s community supervision consistent with its oral ruling.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Price, J.

Che, J.